# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD.; FTX TRADING LTD.<br><br>    Plaintiffs,<br><br>-against-<br><br>VOYAGER DIGITAL, LLC; HTC TRADING INC.<br><br>    Defendants. | Adv. Pro. No. 23-50084 (JTD) |

## FIRST AMENDED COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS

Plaintiffs Alameda Research Ltd. ("Alameda") and FTX Trading Ltd. ("FTX Trading," together with Alameda, the "Plaintiffs") bring this complaint (the "Complaint") against Voyager Digital, LLC and HTC Trading Inc. (collectively, the "Defendants") and allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## NATURE OF THE CASE

1. This is an adversary proceeding (the "Adversary Proceeding") brought by Plaintiffs pursuant to Sections 547 and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), seeking to avoid and recover from the Defendants, or from any other person or entity for whose benefit the transfers were made, all transfers of property of Plaintiffs during the ninety (90) day period (the "Avoidance Period") prior to commencement of the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case"), and after the commencement of the Voyager Chapter 11 Cases (as defined below).[2]

2. The collapse of Alameda and its affiliates amid allegations that Alameda was secretly borrowing billions of FTX-exchange assets is widely known. Largely lost in the (justified) attention paid to the alleged misconduct of Alameda, its affiliates and their now-indicted former leadership has been the role played by Voyager and other cryptocurrency "lenders" who funded Alameda and fueled that alleged misconduct, either knowingly or recklessly. Voyager's business model was that of a feeder fund. It solicited retail investors and invested their money with little or no due diligence in cryptocurrency investment funds like Alameda and Three Arrows Capital. To that end, Voyager lent Alameda hundreds of millions of dollars' worth of cryptocurrency in 2021 and 2022.

3. Following the commencement of its chapter 11 cases, Voyager demanded repayment of all of its outstanding loans to Alameda, including, in some instances, prior to stated maturity dates. Voyager was repaid in full.

---

[2] As discussed below, because this Complaint asserts claims against Voyager (as defined below) that arose after the commencement of the Voyager Chapter 11 Cases, the automatic stay under Section 362 of the Bankruptcy Code in the Voyager Chapter 11 Cases does not apply to or bar this action. 11 U.S.C. § 362(a)(1).

4.  In addition, Voyager made a series of withdrawals from its customer account with Plaintiff FTX Trading in the ninety (90) day period prior to the Petition Date (as defined below).

5.  This Adversary Proceeding seeks to recover those funds preferentially transferred to Defendants prior to the Petition Date for the benefit of Plaintiffs' creditors (such claims, the "Preference Claims").  The preferential transfers were made after the commencement of the Voyager Chapter 11 Cases and are therefore recoverable by Plaintiffs on an administrative priority basis pursuant to sections 503 and 507 of the Bankruptcy Code.

6.  Plaintiffs have reviewed the transfers made to the Defendants during the Avoidance Period and have determined that the transfers set forth on **Exhibit A** and **Exhibit B** in the aggregate amount of no less than approximately $453.1 million were made by Plaintiffs to or for the benefit of one or more Defendants and are avoidable under Section 547 of the Bankruptcy Code, and must be returned on an administrative priority basis.

7.  During the course of this Adversary Proceeding, Plaintiffs may learn (through discovery or otherwise) of additional transfers made to the Defendants during the Avoidance Period that are avoidable under Section 547 of the Bankruptcy Code.  Plaintiffs intend to avoid and recover all such transfers made to or for the benefit of the Defendants or any other transferee during the Avoidance Period.  Plaintiffs reserve the right to further amend this Complaint to include, without limitation:  (i) further information regarding the Transfers (as defined below), (ii) additional transfers made during the Avoidance Period, (iii) additional plaintiffs, (iv) modifications of and/or revision to the Defendants' names, (v) additional defendants, and (vi) additional causes of action, if applicable (collectively, the "Amendments"),

that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

## JURISDICTION AND VENUE

8. This Adversary Proceeding relates to Plaintiffs' Chapter 11 Cases filed with this Court on November 11, 2022 (the "Petition Date").[3]

9. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

10. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1409 and venue in this Court is consistent with the interests of justice, judicial economy and fairness. Courts typically defer to a plaintiff's choice of forum. In addition, this Adversary Proceeding asserts claims arising under section 547 of the Bankruptcy Code and belonging to Plaintiffs as debtors-in-possession in a chapter 11 proceeding, and therefore should be heard by the Bankruptcy Court overseeing their chapter 11 proceedings. This Court's extensive familiarity with the facts and background of these Chapter 11 Cases and the likelihood that the Court will be presiding over other avoidance actions brought by the Debtors' estates support this Court adjudicating this action. Accordingly, Plaintiffs submit that this Court is the proper venue for this Adversary Proceeding.

---

[3] November 11, 2022 is the Petition Date for all of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and each, a "Debtor"), except for Debtor West Realm Shires Inc. whose Petition Date is November 14, 2022.

-4-

12. This is an adversary proceeding commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because at a minimum, this matter is a proceeding to recover money or property belonging to the Plaintiffs' chapter 11 estates. Fed. R. Bankr. P. 7001(1).

13. Pursuant to rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiffs consent to the entry of a final order or judgment by the Court on these claims to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

14. Plaintiff Alameda Research Ltd. is a company organized under the laws of the British Virgin Islands. No trustee has been appointed for Alameda in the Chapter 11 Cases and Alameda continues to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Accordingly, Alameda has the authority to file this Complaint commencing, and thereafter to prosecute, this Adversary Proceeding.

15. Plaintiff FTX Trading Ltd. is a corporation organized under the laws of Antigua and Barbuda. No trustee has been appointed for FTX Trading in the Chapter 11 Cases and FTX Trading continues to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Accordingly, FTX Trading has the authority to file this Complaint commencing, and thereafter to prosecute, this Adversary Proceeding.

16. Defendant Voyager Digital, LLC ("Voyager Digital", and with its debtor-affiliates, "Voyager") is a limited liability company organized under the laws of the state of

Delaware. Voyager Digital is a debtor and debtor-in-possession in its chapter 11 proceeding in the U.S. Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court").[4] As described herein, this Complaint asserts claims against Voyager Digital that arose after the Petition Date and, necessarily, after the commencement of the Voyager Chapter 11 Cases, and therefore the automatic stay under Section 362 of the Bankruptcy Code in the Voyager Chapter 11 Cases does not apply to or bar this action.

17. Defendant HTC Trading Inc. ("HTC") is a corporation organized under the laws of the Cayman Islands. HTC is not a debtor in the Voyager Chapter 11 Cases.

## FACTUAL BACKGROUND

18. Just prior to the commencement of these Chapter 11 Cases, John J. Ray III was appointed Chief Executive Officer of the Debtors, and the Debtors' former leadership, including former Chief Executive Officer Sam Bankman-Fried, was removed.

### A. Transfers made by Alameda to the Defendants

19. On July 5, 2022 (the "Voyager Petition Date"), Defendant Voyager Digital and certain of its affiliates filed voluntary petitions for relief under title 11 of the Bankruptcy Code in the SDNY Bankruptcy Court. Prior to the Voyager Petition Date, the Defendants provided certain cryptocurrency loans to Alameda pursuant to (i) a Master Loan Agreement, dated September 2, 2021, by and between Alameda, as borrower, and Defendants, as lenders; and (ii) loan term sheets between Alameda and Defendants (each such term sheet, a "Loan Term Sheet").

---

[4] *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 5, 2022) (as jointly administered, the "Voyager Chapter 11 Cases")

20. As of the Voyager Petition Date, Alameda was party to ten (10) individual Loan Term Sheets with Defendants providing the material terms of the corresponding loan (each, an "Alameda Loan," and collectively, the "Alameda Loans").

21. After the Voyager Petition Date, on or around September 6, 2022, Defendant Voyager Digital requested that Alameda repay certain Alameda Loans in the form of cryptocurrencies with an approximate value of $248.8 million as of the date of payment, which Alameda repaid to one or more Defendants (each, a "September Transfer," and collectively, the "September Transfers").[5]

22. On September 12, 2022, Voyager filed the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Return Collateral and (II) Granting Related Relief* [SDNY Docket No. 402] (the "Unwind Motion") with the SDNY Bankruptcy Court seeking entry of an order authorizing Defendant Voyager Digital to return to Alameda certain cryptocurrency belonging to Alameda, but held by Defendant Voyager Digital as purported collateral (the "Purported Collateral").[6]  Alameda has to date been unable to determine whether (i) Defendants held a valid and effective lien or security interest in any of the Purported Collateral at any time; (ii) whether any of the Purported Collateral validly secured or attached to any obligations of Alameda or any other party, including any Alameda Loan; and (iii) whether the value of the Purported Collateral would provide Defendants with any recovery in a hypothetical chapter 7 liquidation of Alameda.

23. On September 19, 2022, Alameda and Defendants executed a payoff letter providing for the repayment of the Alameda Loans that remained outstanding after the

---

[5] The September Transfers consisted of (i) 220,000,000 DOGE; (ii) 105,000 ETH; (iii) 600,000 LINK; (iv) 81,000 LTC; (v) 700,000 LUNC; (vi) 4,900,000 SAND; (vii) 50,000,000 USDC; and (viii) 2,000,000 VGX.

[6] The Purported Collateral consisted of (i) 4,650,000 FTT and (ii) 63,750,000 SRM.

September Transfers (the "October Loans"), as well as certain unpaid and outstanding loan fees owed by Alameda on account of previously repaid Alameda Loans (the "Outstanding Loan Fees") and the return of the Purported Collateral.

24. On or around October 17, 2022, in accordance with the Unwind Motion, Alameda repaid the October Loans (each, an "October Transfer," and collectively, the "October Transfers")[7] and the Outstanding Loan Fees,[8] and Defendant Voyager Digital returned the Purported Collateral to Alameda. The October Transfers had an approximate value of $190.6 million as of the date of payment, and the Outstanding Loan Fees had an approximate value of $3.3 million as of the date of payment.

25. In addition to the material loan repayments described above, on or around August 15, 2022, Alameda paid to one or more Defendants accrued and unpaid interest on the outstanding Alameda Loans in the form of cryptocurrencies with a value as of such date of approximately $3.2 million (the "August Interest Payment," and together with the September Transfers and October Transfers, the "Alameda Transfers").[9]

26. In accordance with Bankruptcy Code Section 547(b), Alameda has analyzed available information and hereby seeks to avoid all of the Alameda Transfers as set forth on **Exhibit A** as it reasonably believes all of such Alameda Transfers are avoidable after giving effect to Defendants' known or reasonably knowable affirmative defenses under Section 547(c) of the Bankruptcy Code.

---

[7] The October Transfers consisted of (i) 6,500 BTC and (ii) 50,000 ETH.

[8] The Outstanding Loan Fees consisted of (i) 1,972.600137 VGX; (ii) 319.558082 LTC; (iii) 3,550.684247 LINK; (iv) 1,301,917.81 DOGE; (v) 45,912.32644 SAND; (vi) 7,939.726301 LUNC; (vii) 493,150.6842 USDC; (viii) 53.423288 BTC; and (ix) 1,204.386849 ETH.

[9] The August Interest Payment consisted of (i) 33.123288 BTC; (ii) 1,121,095.890411 DOGE; (iii) 921.506849 ETH; (iv) 3,057.534247 LINK; (v) 275.178082 LTC; (vi) 6,836.986301 LUNC; (vii) 39,535.616438 SAND; (viii) 424,657.534247 USDC; and (ix) 1,698.630137 VGX.

### B.  Transfers made by FTX Trading to the Defendants

27.  As of the Petition Date, Defendants maintained a customer account on the FTX.com exchange in the name of HTC Trading Inc. (the "FTX Account").  Between August 13, 2022 and the Petition Date, Defendants made a series of withdrawals from the FTX Account (the "FTX Transfers," and together with the Alameda Transfers, the "Transfers").  The FTX Transfers had a combined approximate value of $7.3 million as of the applicable dates of such transfers.

28.  In accordance with Bankruptcy Code Section 547(b), FTX Trading has analyzed available information and hereby seeks to avoid all of the FTX Transfers as set forth on **Exhibit B** as it reasonably believes all of such FTX Transfers are avoidable after giving effect to Defendants' known or reasonably knowable affirmative defenses under Section 547(c) of the Bankruptcy Code.

### CAUSES OF ACTION

### COUNT ONE
### ALAMEDA PREFERENCE CLAIM PURSUANT TO 11 U.S.C. § 547

29.  The allegations in paragraphs 1 through 28 are adopted as if fully set forth herein.

30.  Alameda made the Alameda Transfers to Defendants within the Avoidance Period, as more specifically described in **Exhibit A**.

31.  Each of the Alameda Transfers to the Defendants was a transfer of property of Alameda as indicated on **Exhibit A**.

32.  Each of the Alameda Transfers was made to or for the benefit of one or more of the Defendants.

33. With respect to each of the Alameda Transfers made to Defendants, Defendants were creditors of Alameda with respect to which such Alameda Transfer was made (within the meaning of 11 U.S.C. § 101(10)), or, alternately, Defendants received such Alameda Transfer for the benefit of a creditor or creditors of Plaintiffs.

34. Each of the Alameda Transfers to the Defendants was made on account of an antecedent debt owed by Alameda to the Defendants with respect to which such Alameda Transfer relates.

35. The Alameda Transfers were made within ninety (90) days of the Petition Date.

36. Each of the Alameda Transfers was made while the Plaintiffs were insolvent.

37. Each of the Alameda Transfers enabled Defendants to receive more than the Defendants would have received if (i) Alameda's Chapter 11 Case were a case under chapter 7 of the Bankruptcy Code; (ii) the Alameda Transfers had not been made; and (iii) the Defendants received payment on account of the debt paid by the Alameda Transfers to the extent provided by the provisions of the Bankruptcy Code.

38. As of the date hereof, the Defendants have not returned any of the Alameda Transfers to Alameda.

39. Alameda is entitled to an order and judgment under 11 U.S.C. § 547 that the Alameda Transfers are avoided.

**COUNT TWO**
**PROPERTY RECOVERY ON ACCOUNT OF THE ALAMEDA TRANSFERS PURSUANT TO 11 U.S.C. § 550**

40. The allegations in paragraphs 1 through 39 are adopted as if fully set forth herein.

41. As alleged above, Alameda is entitled to avoid the Alameda Transfers under Section 547 of the Bankruptcy Code.

42. As Defendants are the initial, immediate, or mediate transferees of the Alameda Transfers, Alameda is entitled to receive for its bankruptcy estate the value of the Alameda Transfers under Section 550 of the Bankruptcy Code plus interest thereon at the maximum legal rate and costs to the fullest extent allowed by applicable law.

## COUNT THREE
## FTX TRADING PREFERENCE CLAIM PURSUANT TO 11 U.S.C. § 547

43. The allegations in paragraphs 1 through 42 are adopted as if fully set forth herein.

44. FTX Trading made the FTX Transfers to Defendants within the Avoidance Period, as more specifically described in **Exhibit B**.

45. Each of the FTX Transfers to the Defendants was a transfer of property of FTX Trading as indicated on **Exhibit B**.

46. Each of the FTX Transfers was made to or for the benefit of one or more of the Defendants.

47. With respect to each of the FTX Transfers made to Defendants, Defendants were creditors of FTX Trading with respect to which such FTX Transfer was made (within the meaning of 11 U.S.C. § 101(10)), or, alternately, Defendants received such FTX Transfer for the benefit of a creditor or creditors of Plaintiffs.

48. Each of the FTX Transfers to the Defendants was made on account of an antecedent debt owed by FTX Trading to the Defendants with respect to which such FTX Transfer relates.

49. The FTX Transfers were made within ninety (90) days of the Petition Date.

50. Each of the FTX Transfers was made while the Plaintiffs were insolvent.

51. Each of the FTX Transfers enabled Defendants to receive more than the Defendants would have received if (i) FTX Trading's Chapter 11 Case were a case under chapter 7 of the Bankruptcy Code; (ii) the FTX Transfers had not been made; and (iii) the Defendants received payment on account of the debt paid by the FTX Transfers to the extent provided by the provisions of the Bankruptcy Code.

52. As of the date hereof, the Defendants have not returned any of the FTX Transfers to FTX Trading.

53. FTX Trading is entitled to an order and judgment under 11 U.S.C. § 547 that the FTX Transfers are avoided.

## COUNT FOUR
### PROPERTY RECOVERY ON ACCOUNT OF THE FTX TRANSFERS PURSUANT TO 11 U.S.C. § 550

54. The allegations in paragraphs 1 through 53 are adopted as if fully set forth herein.

55. As alleged above, FTX Trading is entitled to avoid the FTX Transfers under Section 547 of the Bankruptcy Code.

56. As Defendants are the initial, immediate, or mediate transferees of the FTX Transfers, FTX Trading is entitled to receive for its bankruptcy estate the value of the FTX Transfers under Section 550 of the Bankruptcy Code plus interest thereon at the maximum legal rate and costs to the fullest extent allowed by applicable law.

## COUNT FIVE
## DECLARATORY JUDGMENT THAT THE PREFERENCE CLAIMS ARE NOT SUBJECT TO EQUITABLE SUBORDINATION PURSUANT TO SECTION 502 OF THE BANKRUPTY CODE ON ACCOUNT OF PRE-PETITION CONDUCT AS A MATTER OF LAW

57. The allegations in paragraphs 1 through 56 are adopted as if fully set forth herein.

58. Plaintiffs seek and are entitled to declaratory and other relief pursuant to 28 U.S.C. §§ 2201, *et seq*.

59. Each Plaintiff brings this Complaint in its capacity as a debtor-in-possession in the Chapter 11 Cases seeking to recover the value of the Transfers for its bankruptcy estates.

60. Plaintiffs in their capacity as debtors-in-possession did not engage in inequitable conduct that may form the basis of equitable subordination.

61. Plaintiffs in their capacity as debtors-in-possession are innocent successors to the pre-petition Debtors and may not be imputed with any pre-petition conduct by such pre-petition entities or their former leadership.

62. Plaintiffs' creditors are the beneficiaries of this action and are innocent parties with respect to any conduct by the pre-petition Debtors or their former leadership, and may not be impeded from benefitting from recoveries on account of the Preference Claims on account of any such conduct.

63. Accordingly, Plaintiffs are entitled to a declaratory judgment that the Preference Claims are not subject to equitable subordination under Section 502 of the Bankruptcy Code on account of any pre-petition conduct as a matter of law.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court:

64. Enter an order that the Transfers are avoidable preferential transfers under 11 U.S.C. § 547, that Plaintiffs are entitled to recover the Transfers under 11 U.S.C. § 550, and that Plaintiffs are entitled to a declaratory judgment that any such recovery is not subject to equitable subordination;

65. Award Plaintiffs no less than $453.1 million (plus the value of any additional avoidable transfers Plaintiffs learn, through discovery or otherwise, were made to the Defendants during the Avoidance Period);

66. Award Plaintiffs their attorneys' fees, pre- and post-judgment interests, and costs of suit; and

67. Award Plaintiffs all other relief, at law or equity, to which they may be entitled.

| | |
|---|---|
| Dated: March 2, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         mcguire@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Stephen Ehrenberg (*pro hac vice* to be filed)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>Benjamin S. Beller (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         ehrenbergs@sullcrom.com<br>         kranzleya@sullcrom.com<br>         bellerb@sullcrom.com<br><br>*Counsel for the Debtors*<br>*and Debtors-in-Possession* |

Dated: March 2, 2023  
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*  
Adam G. Landis (No. 3407)  
Matthew B. McGuire (No. 4366)  
Kimberly A. Brown (No. 5138)  
Matthew R. Pierce (No. 5946)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450  
E-mail: landis@lrclaw.com  
      mcguire@lrclaw.com  
      brown@lrclaw.com  
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**  
Andrew G. Dietderich (admitted *pro hac vice*)  
James L. Bromley (admitted *pro hac vice*)  
Brian D. Glueckstein (admitted *pro hac vice*)  
Stephen Ehrenberg (*pro hac vice* to be filed)  
Alexa J. Kranzley (admitted *pro hac vice*)  
Benjamin S. Beller (admitted *pro hac vice*)  
125 Broad Street  
New York, NY 10004  
Telephone: (212) 558-4000  
Facsimile: (212) 558-3588  
E-mail: dietdericha@sullcrom.com  
      bromleyj@sullcrom.com  
      gluecksteinb@sullcrom.com  
      ehrenbergs@sullcrom.com  
      kranzleya@sullcrom.com  
      bellerb@sullcrom.com

*Counsel for the Debtors*  
*and Debtors-in-Possession*